# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER REED, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) Case No. 1:16-cv-00310-TWP-MPB |
| SUPERINTENDANT, New Castle Correctional Facility, | ) ) ) ) |
| Respondent. | ) ) |

## ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on the Petition for Writ of Habeas Corpus filed by Christopher Reed ("Mr. Reed") ([Filing No. 1](#)) which challenges a prison disciplinary proceeding, identified as NCF 15-10-0147, in which he was found guilty of threatening. For the reasons explained in this Entry, Mr. Reed's Petition must be **denied.**

### I. OVERVIEW

Prisoners in Indiana custody may not be deprived of credit time, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## II. THE DISCIPLINARY PROCEEDING

On October 13, 2015, Officer Davis issued a Report of Conduct charging Mr. Reed with "threatening" in violation of Code B-213. ([Filing No. 10-1](#).) The Report of Conduct states:

> On the above date and time I Officer Davis was conducting a shakedown on offender Christopher Reed #985100 in K unit Pod 2 quiet room. While conducting a shakedown, Offender Reed kept entering into the quiet room yelling and cursing, which disturbed my shakedown. Offender Reed was given 3 direct orders to back away and go to dayroom. Offender Reed then came back into TV room with fist balled hovering over me. I then announced "OC" and Offender Reed walked towards me aggressively with fist still balled. I then deployed "one second" burst of OC which landed on the side of his face. A signal 10 was then called and Offender Reed was placed in cuffs.

([Filing No. 10-1](#)).

Mr. Reed was notified of the charge on October 14, 2015, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing (Screening Report). ([Filing No. 10-2](#).) Mr. Reed pled not guilty. *Id.* The Screening Officer noted that Mr. Reed wanted to get statements from the offenders in K2-303 and K2-120 and that he requested the video of the K2 dayroom. *Id.*

Offender Kline submitted the following statement:

> I saw him ask the CO to be carefully [sic] with his pic's [sic] of his family and the CO pulled his macs [sic] can and sprayed him just for asking him to not mess up his pic's [sic]. He never threatened the CO. He just walked up to the doorway and asked him to be carefully [sic] with his pic's [sic].

([Filing No. 10-3](#)).

Offender Patrick also submitted a statement:

> The police were conducting a shackdown [sic] and Reed ask [sic] for a Sgt. and the officer told him to go to day room and he did then the officer was throwing his pic's [sic] of his family around and he said dont [sic] throw his pic's [sic] around and the officer's [sic] sprayed him [sic] he never made no threat.

([Filing No. 10-4](#)).

The video summary stated:

2

> The video for the above case was reviewed as the offender requested. Video shows an offender matching offender Reed, Christopher #985100 description and photo walk to the quiet room doorway, but due to poor video quality and the camera is too far away I was unable to see any details. Camera does not record sound.

([Filing No. 10-22](#)).

The hearing officer conducted a disciplinary hearing on October 20, 2015. ([Filing No. 10-23](#).) The hearing officer noted Mr. Reed's statement, "I was in the area, I was not aggressive toward. [sic] I just asked [sic] not to throw my picts. [sic] around. I may have raised my voice." *Id*. The hearing officer relied on the staff reports, the statement of the offender, witness statements, and the physical evidence (video), in determining that Mr. Reed had violated Code B-213. *Id.* The sanctions imposed included a restriction of telephone and commissary privileges, disciplinary segregation, the deprivation of 90 days of earned credit time, and the demotion from credit class A to B (suspended). *Id.* The hearing officer imposed the sanctions because of the seriousness and nature of the offense, the offender's attitude and demeanor during the hearing, and the degree to which the violation disrupted or endangered the security of the facility. *Id.*

Mr. Reed's appeals were denied. This habeas action followed.

### III. **ANALYSIS**

Mr. Reed alleges that his due process rights were violated during the disciplinary proceeding. His claims are challenges to the sufficiency of the evidence.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016). The "some evidence" evidentiary standard in this type of case is much more lenient than "beyond a reasonable doubt" or even "by a preponderance." *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (hearing officer in prison disciplinary case "need not show culpability beyond a reasonable doubt or credit exculpatory evidence."); *McPherson v. McBride*, 188 F.3d 784, 786

3

(7th Cir. 1999) ("In reviewing a decision for 'some evidence,' courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.") (internal quotation omitted). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

"Threatening" as a violation of B-213 is defined in part as "communicating to another person a plan to physically harm, harass or intimidate that person or someone else." http://www.in.gov/idoc/files/02-04-101 APPENDIX OFFENSES 6-1-2015. Mr. Reed contends that he was never in the TV room with his fist balled up nor did he enter the quiet room with his fist balled up hovering over Officer Davis. He argues that the video did not show his fist balled up and there was no physical evidence showing that he took an aggressive stance. He also alleges that the Report of Conduct was contradictory regarding the actual area of the dorm where the incident took place. He asserts that the TV room and quiet room are two completely different areas of the dorm. He argues that the video camera footage should have shown that he had items in both of his hands because he had just gotten out of the shower. Mr. Reed asserts that he did not receive a fair hearing based on all of the evidence, including the witness statements and video footage.

In addition to the Report of Conduct, Officer Davis completed an Incident Report discussing the use of force on October 13, 2015. ([Filing No. 10-6](Filing No. 10-6).) That report states that when Officer Davis entered the quiet room to conduct the shakedown, Mr. Reed followed him. *Id.* When Officer Davis instructed Mr. Reed to leave the room and head to the dayroom, Mr. Reed stated, "Fuck you bitch as[s] motherfucker go shake someone else down." *Id.* Officer Davis instructed

him again to leave the room and Mr. Reed eventually complied. *Id.* As Mr. Reed was leaving, however, he "doubled back" to the quiet room, "walking in an aggressive manner." *Id.* He then stated, "Get a motherfucking Sgt down here now motherfucker or else." *Id.* Officer Davis told Mr. Reed that he was interfering with his job duties and a sergeant would be called as soon as Officer Davis could do so. *Id.* Mr. Reed walked into the dayroom while continuing to yell and curse, causing other offenders to begin to curse as well. *Id.* As Officer Davis was concluding the shakedown of Mr. Reed's property box, Mr. Reed walked back into the quiet room and hovered over him in an aggressive stance with his fist balled saying, "don't touch my fucking property." *Id*. When Mr. Reed was instructed a third time to back away, he instead moved aggressively toward Officer Davis. *Id*. At that point, Officer Davis deployed his OC. *Id.*

To the extent that Mr. Reed argues that the Report of Conduct was not clear because Officer Davis stated that Mr. Reed was in the TV room with his fist balled up rather than the quiet room, the video and the additional incident reports clear up any confusion on that point. The altercation between Mr. Reed and Officer Davis took place in the quiet room. Mr. Reed does not dispute that an incident occurred. Any lack of clarity in the Report of Conduct did not alter the facts or Mr. Reed's ability to present a defense.

Mr. Reed admits that he "may have raised his voice." ([Filing No. 10-23](#).) He does not dispute that he was verbally aggressive by cursing at Officer Davis and by telling him to get a sergeant down there "or else." ([Filing No. 10-1](#); [Filing No. 10-6](#).) Officer Davis' accounts in the Incident Report and the Report of Conduct provide "some evidence" that those events took place. The offender witness statements explain that Mr. Reed wanted the officer to be more careful with his photographs. ([Filing No. 10-3](#).) One witness statement confirms that Mr. Reed had been ordered to go to the dayroom and asked for a sergeant. ([Filing No. 10-4](#).) The fact that neither

5

offender believed Mr. Reed had "threatened" the officer is not dispositive in this case. There is sufficient evidence in the record to support a finding that Mr. Reed's cursing, yelling, refusing orders, and coming back into the room communicated an intention to "harm, harass or intimidate" the officer.

Mr. Reed was given proper notice and had an opportunity to defend the charge. The hearing officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Mr. Reed's due process rights.

## IV. CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceedings. Accordingly, Mr. Reed's Petition for a Writ of Habeas Corpus ([Filing No. 1](Filing No. 1)) must be **DENIED** and the action **dismissed.** Judgment consistent with this Entry shall now issue.

**SO ORDERED**.

Date: 2/21/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher Reed, #985100
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, Indiana  47362


Marjorie H. Lawyer-Smith
OFFICE OF THE INDIANA ATTORNEY GENERAL
marjorie.lawyer-smith@atg.in.gov